

1   Joseph E. White, III
    Lester R. Hooker (241590)
2   SAXENA WHITE P.A.
    2424 N. Federal Highway, Suite 257
    Boca Raton, FL 33431
    Telephone: (561) 394-3399
4   Fax: (561) 394-3082
    jwhite@saxenawhite.com
5   lhooker@saxenawhite.com

    Counsel for Plaintiff

7   Azra Z. Mehdi (220406)
    The Mehdi Firm
8   One Market
    Spear Tower, Suite 3600
9   San Francisco, CA 94105
    Telephone: (415) 293-8039
10  Fax: (415) 293-8001
    azram@themehdifirm.com
11
    Local Counsel for Plaintiff
12



13                    **UNITED STATES DISTRICT COURT**
                     **NORTHERN DISTRICT OF CALIFORNIA**
14

15  LABORERS LOCAL 235 BENEFIT              Case No.  **13    1676**
    FUNDS, Individually and On Behalf of All
16  Others Similarly Situated                CLASS ACTION

17                    Plaintiff,              **COMPLAINT FOR VIOLATIONS OF**
                                             **THE FEDERAL SECURITIES LAWS**
18              v.
                                             DEMAND FOR JURY TRIAL
19  VERIFONE SYSTEMS, INC., DOUGLAS
    G. BERGERON, ROBERT DYKES, and
20  MARC E. ROTHMAN,

21              Defendants.



22

23

24

25

26

27

28

1    Plaintiff Laborers Local 235 Benefit Funds ("Plaintiff"), individually and on behalf
2  of all others similarly situated, by his undersigned attorneys, for its class action complaint
3  ("Complaint") against defendants VeriFone Systems, Inc. ("VeriFone"), Douglas G.
4  Bergeron, Robert Dykes, and Marc E. Rothman ("Defendants"), alleges upon personal
5  knowledge as to itself and its own acts, and upon information and belief as to all other
6  matters, based on, *inter alia*, the investigation conducted by and through its attorneys,
7  which included, among other things, a review and analysis of news reports, the public
8  documents of Defendants, regulatory materials, court documents, scholarly research and
9  other expert analysis, wire and press releases, and other publicly available information.

10                                **NATURE OF THE ACTION**

11    1.    This is a federal securities fraud class action on behalf of a class
12  consisting of all persons other than Defendants who purchased or otherwise acquired
13  VeriFone common stock between December 14, 2011 and February 20, 2013, both dates
14  inclusive (the "Class Period"), and were damaged thereby. This action is brought against
15  VeriFone and the Company's former Chief Executive Officer ("CEO"), Douglas G.
16  Bergeron; its former Chief Financial Officer ("CFO") and Executive Vice President, Robert
17  Dykes; and its Executive Vice President and current CFO, Marc E. Rothman (collectively,
18  the "Individual Defendants"), for violations of the Securities Exchange Act of 1934 (the
19  "Exchange Act") and Rule 10b-5 promulgated thereunder.

20    2.    VeriFone purports to be a global provider of secure electronic payment
21  solutions. VeriFone provides expertise, solutions and services that add value to the point-
22  of-sale with merchant-operated, consumer-facing and self-service payment systems for
23  the financial, retail, hospitality, petroleum, government and healthcare vertical markets in
24  developed and emerging economies worldwide.

25    3.    During the Class Period, Defendants made materially false and misleading
26  statements and omissions regarding the Company's financial condition, growth, revenues,
27  and ability to execute its business plan, among other things.

28

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                    - 1 -

1    4.    Indeed, throughout the Class Period, VeriFone held itself out to the public
2  as a Company achieving steady and consistent growth, beating analysts' forecasts every
3  quarter for more than two years. In order to propagate this image, Defendants made a
4  series of false and/or misleading statements regarding VeriFone's growth and revenues,
5  concealing that: (i) the Company was encountering serious problems in transitioning to
6  an increasingly subscriptions-based service model; (ii) VeriFone used past acquisitions
7  to mask its declining revenue base; (iii) the Company inappropriately recognized revenues
8  from distributors during periods where such revenues should have been deferred; (iv) the
9  Company lacked adequate internal and financial controls; and (v) as a result of the above,
10  the Company's financial statements were materially false and misleading at all relevant
11  times.

12    5.    While issuing these materially misleading statements, which caused
13  VeriFone common stock to trade at artificially inflated prices, the Individual Defendants
14  and other Company insiders disposed of over $11 million worth of VeriFone stock.

15    6.    On April 30, 2012, Deutsche Bank issued a detailed research report
16  asserting for the first time that VeriFone was inflating its organic growth through
17  acquisitions by treating as "organic growth" VeriFone sales to legacy customers of a
18  company known as Hypercom Corp. ("Hypercom") and possibly to customers of other
19  acquired companies. In reality, such sales simply cannibalized millions of dollars in
20  Hypercom product sales and did not constitute organic growth. This disclosure caused
21  the price of VeriFone stock to drop from $54.44 per share on April 27, 2012, to $47.64
22  per share on April 30, 2012, or over 12%.

23    7.    On February 4, 2013, the Company issued a press release announcing the
24  retirement of its then-CFO, Defendant Robert Dykes, as well as its Vice Chairman,
25  Ellmore (Bud) Waller. Defendant Marc E. Rothman was named as the Company's new
26  CFO. On this news, the price of VeriFone stock declined $0.87 per share or nearly 2.5%,
27  to close at $34.37 per share.

28

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS          - 2 -

1        8.     Then, on February 20, 2013, the Company announced its preliminary

2 financial results for the first fiscal quarter ended January 31, 2013. VeriFone reported that

3 it expected its first quarter non-GAAP net income to be between $0.47 and $0.50 per share

4 and GAAP net income to be between $0.07 and $0.10 per share on revenue of $424

5 million, falling well below analysts' profit forecast of $0.73 per share on revenue of $492

6 million. VeriFone attributed these lower than expected results to several factors, including

7 weak macro-economic conditions in Europe and an increase in deferred revenue related to

8 volume shipments to customers in the Middle East and Africa that did not meet first

9 quarter revenue recognition requirements.  On this news, VeriFone's share price

10 plummeted, dropping to $13.65 per share or nearly 43%, to a closing price of $18.24 per

11 share on February 21, 2013.

12        9.     Analysts immediately began to doubt VeriFone's explanation for the

13 Company's disappointing results.  With respect to Europe's weak macro-economic

14 conditions, analysts noted that VeriFone's competitors, such as NCR Corp. and Micros

15 Systems, were not impacted by the weak environment nearly as much as VeriFone.

16 Moreover, several financial analysts suggested that the cause for the revenue shortfall was

17 the Company's newly announced revenue recognition policy in Africa and the Middle

18 East, adopted by VeriFone's new CFO, Marc E. Rothman, who took a more

19 conservative accounting approach than that of his predecessor, Robert Dykes. Deutsche

20 Bank, for example, wrote in an analyst report that "the recent CFO retirement/resignation

21 and the first quarter revenue recognition requirements could also suggest accounting red

22 flags in prior quarters."

23        10.    As a result of Defendants' fraudulent course of conduct, and the

24 corresponding decline in the market value of VeriFone common stock once the truth

25 about the Company's condition began to be revealed, Plaintiff and other Class members

26 have suffered significant damages.

27

28

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS      - 3 -

1

**JURISDICTION AND VENUE**

2 11. This action arises under Sections 10(b) and 20(a) of the Exchange Act, 15
3 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R.
4 §240.10b-5.

5 12. This Court has jurisdiction over the subject matter of this action pursuant to
6 28 U.S.C. §1331 and §27 of the Exchange Act, 15 U.S.C. §78aa.

7 13. Venue is proper in this District pursuant to Section 27 of the Exchange Act,
8 15 U.S.C. §78aa and 28 U.S.C. §1391(b). Defendant VeriFone maintains its principal
9 place of business at 2099 Gateway Place, Suite 600, San Jose, California 95110, which is
10 located within this District, the Individual Defendants conduct business in this District, and
11 many of the acts giving rise to the violations alleged herein, including the preparation and
12 dissemination of materially false and misleading information and omissions, occurred in
13 substantial part in this District.

14 14. In connection with the acts alleged in this Complaint, Defendants, directly or
15 indirectly, used the means and instrumentalities of interstate commerce including, but not
16 limited to, mail, interstate telephone communications, and the facilities of the national
17 securities markets.

18

**PARTIES**

19 15. Plaintiff Laborers Local 235 Benefit Funds purchased the common stock of
20 VeriFone during the Class Period. As a result of the fraudulent conduct alleged herein,
21 Plaintiff suffered damages in connection with its purchase(s). Attached hereto is a certification
22 setting forth Plaintiff's transactions in VeriFone common stock during the Class Period.

23 16. Defendant VeriFone is a Delaware corporation with its principal place of
24 business located at 2099 Gateway Place, Suite 600, San Jose, California 95110.
25 VeriFone purports to be a global provider of secure electronic payment solutions. The
26 Company claims to provide expertise, solutions and services that add value to the point-
27 of-sale with merchant-operated, consumer-facing and self-service payment systems for
28 the financial, retail, hospitality, petroleum, government and healthcare vertical markets in

1   developed and emerging economies worldwide. Throughout the Class Period, the
2   Company traded in an efficient market on the New York Stock Exchange ("NYSE") under
3   the ticker symbol "PAY." The Company currently has over 108 million shares outstanding.

4        17.    Defendant Douglas G. Bergeron ("Bergeron") was, at all relevant times, the
5   Company's CEO as well as a member of the Company's Board of Directors. During the
6   Class Period, Defendant Bergeron signed and certified the Company's SEC filings pursuant to
7   Sections 302 and 906 of the Sarbanes-Oxley Act of 2002 ("SOX"). Bergeron resigned from the
8   Company on March 11, 2013, after the close of the Class Period.

9        18.    Defendant Robert Dykes ("Dykes") was the Company's CFO and Executive
10  Vice President at all relevant times until his resignation on February 4, 2013. During the
11  Class Period, Defendant Dykes signed and certified the Company's SEC filings pursuant to
12  Sections 302 and 906 of SOX.

13       19.    Defendant Marc E. Rothman ("Rothman") is the current CFO of VeriFone.
14  He was appointed as Executive Vice President and CFO on February 4, 2013.

15       20.    Defendants Bergeron, Dykes and Rothman are referred to herein, collectively,
16  as the "Individual Defendants."

17                        **SUBSTANTIVE ALLEGATIONS**

18                                **Background**

19       21.    VeriFone is the global leader in secure electronic payment solution and provides
20  expertise, solutions and services that add value to the point-of-sale ("POS") with merchant-
21  operated, consumer-facing and self-service payment systems for the financial, retail, hospitality,
22  petroleum, government, and healthcare vertical markets. The Company offers a variety of
23  hardware, software and security products, solutions and services in an integrated platform that
24  consolidate consumer engagement programs, assets and payment processing into a single point
25  of access. These offerings allow merchants to predict and contain costs as well as manage
26  payments, loyalty programs and promotions, while facilitating analysis of channels, initiatives
27  and provisioning management.

28

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                    - 1 -

**Materially False and Misleading
Statements Issued During the Class Period**

22. On December 14, 2011, the first day of the Class Period, the Company reported financial and operating results for the fourth quarter and fiscal year ended October 31, 2011. For the quarter, the Company announced net income of $199 million, or $1.84 diluted earnings per share ("EPS") and net revenue of $411 million, compared to net income of $49 million, or $0.55 diluted EPS and net revenue of $276 million for the same period the year prior. For the year, the Company announced net income of $282 million or $2.92 diluted EPS and net revenue of $1.3 billion, compared to net income of $99 million, or $1.13 diluted EPS and net revenue of $1 billion for the same period the year before.

23. On December 23, 2011, the Company filed an annual report for the year ended October 31, 2011 on Form 10-K with the SEC, that was signed by, among others, Defendants Bergeron and Dykes, and repeated the Company's previously reported financial results. In addition, the Form 10-K contained signed certifications pursuant to SOX by Defendants Bergeron and Dykes, stating that the financial information contained in the Form 10-K was accurate and disclosed all material changes to the Company's internal controls over financial reporting.

24. On March 5, 2012, VeriFone issued a press release announcing its financial and operating results for the quarter ended January 31, 2012. For the quarter, the Company announced a net loss of $3 million, or ($0.03) diluted EPS and net revenue of $420 million, compared to net income of $32 million, or $0.35 diluted EPS and net revenue of $284 million for the same period the year prior.

25. On March 12, 2012, the Company filed its quarterly report for the period ended January 31, 2012 on Form 10-Q with the SEC, which was signed by Defendants Bergeron and Dykes, and repeated the Company's previously announced quarterly financial results. In addition, the Form 10-Q contained signed certifications pursuant to SOX by Defendants Bergeron and Dykes, stating that the financial information contained in the Form 10-Q was accurate and disclosed all material changes to the Company's internal controls over financial reporting.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS - 2 -

1    26.    On April 30, 2012, Deutsche Bank published a comprehensive analyst report

2  explaining that VeriFone was inflating its organic growth through acquisitions by treating as

3  "organic growth" VeriFone sales to legacy Hypercom customers (and possibly customers

4  of other acquired companies). In reality, such sales simply cannibalized tens of millions of

5  dollars in Hypercom product sales. Indeed, Deutsche Bank calculated that VeriFone's true

6  rate of organic growth was negative .1% year-over-year, and would be approximately 4%-

7  6% going forward. Given VeriFone's poor financial disclosures and overstated growth,

8  Deutsche Bank cut its rating on the stock to sell.

9    27.    Also on April 30, 2012, in response to Deutsche Bank's report, the

10  Company assured investors regarding its calculation of organic growth, and reaffirmed

11  its expectations for robust organic growth for fiscal year 2012 and long-term. Indeed,

12  VeriFone issued a press release, which stated, in relevant part:

13      VeriFone Systems, Inc. (NYSE: PAY), issued the following statement regarding
        a report on organic growth calculations that was disseminated this morning
14      from Deutsche Bank.

15      VeriFone uses a methodology of calculating organic growth prescribed by
        the vast majority of investors and Wall Street analysts: excluding revenue of
16      all acquired companies, large and small, until 12 months after acquisition.

17      Deutsche Bank is choosing to include in its calculation the revenue of acquired
        companies as if VeriFone had owned them for the entire current and year-
18      ago period. We believe this does not reflect the true organic results of
        VeriFone's business and we reaffirm our expectations for 10-15% organic
19      growth rates for fiscal year 2012 and long-term.

20    28.    This disclosure caused the price of VeriFone stock to drop from $54.44 per

21  share on April 27, 2012, to $47.64 per share on April 30, 2012, or over 12%.

22    29.    On May 24, 2012, VeriFone issued a press release reporting its financial and

23  operating results for the quarter ended April 30, 2012. For the quarter, the Company

24  reported net income of $15 million, or $0.13 diluted EPS and net revenue of $472 million,

25  compared to net income of $25 million, or $0.27 diluted EPS and net revenue of $292

26  million for the same period the year prior.

27    30.    On June 11, 2012, the Company filed a quarterly report for the period

28  ended April 30, 2012 on Form 10-Q with the SEC, which was signed by Defendants

1  Bergeron and Dykes, and repeated the Company's previously announced quarterly
2  financial results. In addition, the Form 10-Q contained signed certifications pursuant to
3  SOX by Defendants Bergeron and Dykes, stating that the financial information contained in
4  the Form 10-Q was accurate and disclosed all material changes to the Company's internal
5  controls over financial reporting.

6      31.     On September 5, 2012, VeriFone issued a press release announcing its
7  financial and operating results for the quarter ended July 31, 2012. For the quarter, the
8  Company reported net income of $38 million, or $0.34 diluted EPS and net revenue of $489
9  million, compared to net income of $26 million, or $0.28 diluted EPS and net revenue of
10  $317 million for the same period the year prior.

11     32.     On September 10, 2012, the Company filed a quarterly report for the
12  period ended July 31, 2012 on Form 10-Q with the SEC, which was signed by Defendants
13  Bergeron and Dykes, and repeated the Company's previously reported quarterly financial
14  results. In addition, the Form 10-Q contained signed certifications pursuant to SOX by
15  Defendants Bergeron and Dykes, stating that the financial information contained in the Form
16  10-Q was accurate and disclosed all material changes to the Company's internal controls
17  over financial reporting.

18     33.     On December 13, 2012, the Company reported financial and operating results
19  for the fourth quarter and fiscal year ended October 31, 2012. For the quarter, the
20  Company announced net income of $27 million, or $0.24 diluted EPS and net revenue of
21  $485 million, compared to net income of $199 million, or $1.84 diluted EPS and net
22  revenue of $411 million for the same period the year prior. For the year, the Company
23  announced net income of $65 million, or $0.59 diluted EPS and net revenue of $1.9
24  billion, compared to net income of $282 million or $2.92 diluted EPS and net revenue of
25  $1.3 billion for the same period the year prior.

26     34.     On December 19, 2012, the Company filed an annual report for the year ended
27  October 31, 2012 on Form 10-K with the SEC, that was signed by, among others,
28  Defendants Bergeron and Dykes, and repeated the Company's previously announced

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS          - 4 -

1  financial results. In addition, the Form 10-K contained signed certifications pursuant to SOX by
2  Defendants Bergeron and Dykes, stating that the financial information contained in the Form 10-K
3  was accurate and disclosed all material changes to the Company's internal controls over financial
4  reporting.

5       35.    The statements referenced in ¶¶ 22-25, 27, 29-34 were materially false
6  and/or misleading because they misrepresented and failed to disclose the following
7  adverse facts, that were known to Defendants, or recklessly disregarded by them,
8  including that: (i) the Company did not properly execute its plan to move to a more
9  subscriptions-based service model; (ii) VeriFone used past acquisitions to mask its
10 declining revenue base; (iii) the Company inappropriately recognized revenues in
11 periods where they should have been deferred; (iv) the Company lacked adequate
12 internal and financial controls; and (v) as a result of the above, the Company's financial
13 statements were materially false and misleading at all relevant times.

14                          **THE TRUTH COMES TO LIGHT**

15       36.    On February 4, 2013, the Company announced the retirements of its CFO
16 Defendant Robert Dykes, and Vice Chairman Elmore (Bud) Waller, as well as the
17 appointment of Defendant Marc E. Rothman, formerly the CFO at Motorola Mobility, to
18 be the Company's new CFO and Executive Vice President. On this news, the price of
19 VeriFone's stock decreased $0.87 per share or nearly 2.5%, to close at $34.37 per share
20 on February 4, 2013.

21       37.    Then, on February 20, 2013, after the market closed, the Company issued
22 a press release reporting preliminary financial results for the first fiscal quarter ended
23 January 31, 2013 which sharply missed the Company's prior guidance and analysts'
24 expectations, as well as a disappointing updated outlook for VeriFone's second quarter of
25 2013. Specifically, the Company announced that it anticipated revenues of $424 million in
26 the first quarter of 2013 (compared to analysts' average estimate of $492 million),
27 representing the first time in two years that the Company failed to beat analysts'
28 estimates. The Company also announced updated disappointing revenue guidance of

1 | $435 million to $450 million for the second quarter of 2013. The press release stated the

2 | following, in pertinent part:

3 | > VeriFone expects to report Q1 non-GAAP net revenues in the range of
4 | > $425 million to $430 million and Q1 GAAP net revenues in the range of
   | > $424 million to $428 million. VeriFone expects to report non-GAAP net
   | > income per share between $0.47 and $0.50 and GAAP net income per
5 | > share between $0.07 and $0.10.

6 | > The lower than expected results for the first quarter were driven primarily
   | > by:
7 |
8 | > • Continued weak macro-economic conditions in Europe;

9 | > • Increased focus and investments throughout 2012 on longer-term service
   | >   initiatives in multiple jurisdictions     at the expense of near-term
   | >   hardware and software features and customization projects that were
10 | >   reduced or delayed, which resulted in missed revenue opportunities;

11 | > • An increase in deferred revenue related to volume shipments made
    | >   during the quarter to a new mix of customers in the Middle East and
12 | >   Africa. These shipments did not meet first quarter revenue
    | >   recognition requirements;
13 |
14 | > • Lower than anticipated revenue from large Brazilian customers, as
    | >   well as political and economic uncertainty in Venezuela, typically a
    | >   strong market for VeriFone: and
15 |
16 | > • Several customers electing to delay major projects beyond the first
    | >   quarter, as well as the cancelled Washington, D.C. taxi project.

17 | > ***

18 | > The company's updated outlook for the second quarter includes:

19 | > • Non-GAAP net revenues in the range of $435 million to $450
    | >   million;
20 |
21 | > • Non-GAAP net income per share in the range of $0.45 to $0.50;

22 | > • The company expects that non-GAAP net revenues and non-
    | >   GAAP net income per share will grow sequentially in the third and
23 | >   fourth quarters of fiscal 2013.

24 | 38. Analysts were immediately concerned about the Company's disappointing

25 | results, expressing strong skepticism over the Company's explanation for its dismal

26 | performance. In fact, at least one analyst wrote that the recent CFO resignation,

27 | coupled with the first quarter revenue deferral could suggest accounting

28 |

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                    - 6 -

1 improprieties in prior quarters. *Reuters* published a news article titled "*VeriFone*

2 *shares nearly halve, analysts query management*"[1] that stated, in pertinent part:

3     VeriFone shares slid to $17.93, their lowest in nearly three years, and at

4     least seven analysts cut their price targets on the stock. Deutsche Bank, in a
client note, said the company had finally admitted it had failed to execute on its

5     plans to move to a more subscription-based service model.

6     Several analysts suggested that VeriFone's new chief financial officer had taken
a more conservative accounting approach at the company, which already

7     faces a court case for a past accusation of reckless accounting.

8                        ***

    Deutsche, which rates the stock a "sell", slashed its price target to $15 from

9     $27. The brokerage said past acquisitions had masked what was happening
at the company and that it had long been wary of its "aggressive

10     accounting recognition."

11     "The recent CFO retirement/resignation and the first-quarter revenue
recognition requirements could also suggest accounting red flags in prior

12     quarters," Deutsche said, noting the latest quarter's accounts had been signed
off by the new CFO.

13

                       ***

14

    Analysts on Thursday rejected the company's argument that its problems

15     came from the weak economy. While macro conditions may have had an
impact on business in the quarter, the global economy has had far less of an

16     impact on peers such as NCR Corp. and Micros Systems, said Wedbush analyst
Gil Luria, who cut his price target to $22 from $33.

17

18     39.    Similarly, an article on the website Seeking Alpha titled "*VeriFone Now a*

19 *Falling Knife*"[2] noted that the Company's management's explanations for the shortfall

20 were not plausible, pointing to potential accounting manipulations. The article stated

21 the following in relevant part:

22     VeriFone management seems to appreciate that results like these require some
explanation, but I'm not entirely sure I accept the reasons they've offered.

23

    Management mentioned weak conditions in Europe. Fair enough - we all

24     know that conditions in Europe are pretty tough. Buy why, then, is Europe-
based Ingenico not seeing the same trouble?

25

26

27 [1] A copy of this article can be found at: http://www.reuters.com/article/2013/02/21/us-
verfione-results-idUSBRE91K1BF20130221

28 [2] A copy of this article can be found at: http://seekingalpha.com/article/1210901-verifone-
now-a-falling-knife

VeriFone management also talked about a new accounting policy regarding revenue recognition that meant revenue from new distributors in the Mideast and Africa was not recognized this quarter. With a new CFO on board that, too, is a credible explanation. Unfortunately, it also feeds into one of the more persistent bear stories about VeriFone – that the company has been a little too aggressive with its accounting in the past (including its calculation of organic growth). If management was overstating past revenue growth, that could explain why the business has seemingly hit such a hard wall now.

40.     On this news, the price of VeriFone's stock plummeted $13.65 per share or nearly 43%, to a closing price of $18.24 per share on February 21, 2013.

## INAPPLICABILITY OF STATUTORY SAFE HARBOR

41.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as and were not "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker knew that the forward-looking statement was false.

## LOSS CAUSATION/ECONOMIC LOSS

42.     During the Class Period, Defendants made false and misleading statements and engaged in a deceptive course of conduct that artificially inflated the prices of VeriFone common stock and operated as a fraud or deceit on Plaintiff and the Class by misrepresenting the Company's financial condition, growth, revenues, and/or ability to execute its business plan, among other things. Later, when Defendants' prior misrepresentations and fraudulent conduct began to become apparent to the market on April 30, 2012, February 4, 2013, and February 20, 2013, the price of the Company's common stock plunged. As a result of their purchases of VeriFone common stock

1  during the Class Period. Plaintiff and other members of the Class suffered damages
2  under the federal securities laws.

3                          **CLASS ACTION ALLEGATIONS**

4        43.     Plaintiff brings this action as a class action pursuant to Rule 23 of the
5  Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise
6  acquired VeriFone common stock during the Class Period, and who were damaged
7  thereby.   Excluded from the Class are Defendants, members of their immediate
8  families and their legal representatives, heirs, successors, or assigns and any entity in
9  which Defendants have or had a controlling interest.

10       44.     The members of the Class are so numerous that joinder of all members is
11 impracticable. Throughout the Class Period, VeriFone common stock was actively
12 traded on the NYSE. VeriFone has over 108 million shares of common stock
13 outstanding. While the exact number of Class members is unknown to Plaintiff at this
14 time and can be ascertained only through appropriate discovery, Plaintiff believes that
15 there are hundreds or thousands of members in the proposed Class. Record owners and
16 other members of the Class may be identified from records maintained by VeriFone or
17 its transfer agent, and may be notified of the pendency of this action by mail, using the
18 form of notice similar to that customarily used in securities class actions.

19       45.     There is a well-defined community of interest in the questions of law and
20 fact involved in this case. Questions of law and fact common to the members of the Class,
21 which predominate over questions which may affect individual Class members, include:

22       •  whether Defendants' acts violated the federal securities laws, as alleged
23          herein;

24       •  whether Defendants' statements to the investing public during the Class
25          Period misrepresented or omitted material facts about VeriFone's financial
26          condition, growth, revenues, and/or ability to execute its business plan, among
27          other things;

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                          - 9 -

1        • whether the Individual Defendants caused VeriFone to issue false and
2           misleading financial statements during the Class Period;

3        • whether Defendants acted knowingly or recklessly in issuing false and
4           misleading statements and omissions;

5        • whether the prices of VeriFone common stock during the Class Period were
6           artificially inflated because of Defendants' misconduct complained of herein;
7           and

8        • whether the members of the Class have sustained damages and, if so, what is
9           the proper measure of damages.

10      46.    Plaintiff's claims are typical of those of the Class because Plaintiff and the
11 Class sustained damages arising from Defendants' wrongful conduct in violation of the
12 federal securities laws that is complained of herein.

13      47.    Plaintiff will adequately protect the interests of the Class and has retained
14 counsel that is experienced in litigating securities class actions. Plaintiff has no interests
15 which conflict with those of the Class.

16      48.    A class action is superior to all other available methods for the fair and
17 efficient adjudication of this controversy because joinder of all members of the Class is
18 impracticable. Further, because the damages suffered by individual Class members may be
19 relatively small, the expense and burden of individual litigation make it impossible for
20 members of the Class to individually redress the wrongs done to them. There will be no
21 difficulty in the management of this action as a class action.

22                           **PRESUMPTION OF RELIANCE**

23      49.    Plaintiff will rely, in part, upon the presumption of reliance established by
24 the fraud-on-the-market doctrine. At all relevant times, the market for VeriFone's publicly
25 traded common stock was an efficient market for the following reasons, among others:

26        • VeriFone common stock met the requirements for listing and was listed and
27           actively traded under the ticker symbol "PAY" on the NYSE, a highly
28           efficient and liquid market;

1          •   As a regulated issuer, VeriFone filed periodic public reports with the SEC;

2          •   VeriFone regularly communicated with investors via established market

3              communication mechanisms, including through regular disseminations of

4              press releases on the national circuits of major newswire services and through

5              other wide-ranging public disclosures, such as communications with the

6              financial press and other similar reporting services; and

7          •   VeriFone was followed by numerous securities analysts employed by major

8              brokerage firms throughout the Class Period who wrote reports that were

9              distributed to the sales force and certain customers of their respective

10             brokerage firms. Each of these reports was publicly available and entered the

11             public marketplace.

12         50.    Based upon the foregoing, Plaintiff and the members of the Class are

13  entitled to a presumption of reliance upon the integrity of the market.

14                                    **COUNT I**
                  **For Violations of Section 10(b) of the Exchange**
15                 **Act and Rule 10b-5 Against All Defendants**

16         51.    Plaintiff incorporates by reference each and every allegation contained

17  above, as if set forth herein.

18         52.    This claim is brought pursuant to Section 10(b) of the Exchange Act and

19  Rule 10b-5 promulgated thereunder, on behalf of Plaintiff and members of the Class against

20  all Defendants.

21         53.    During the Class Period, Defendants carried out a plan and course of conduct

22  which was intended to and, throughout the Class Period, did: (i) deceive the investing public

23  regarding VeriFone's business and operations, and the intrinsic value of VeriFone

24  common stock; (ii) artificially inflate and maintain the market price of VeriFone common

25  stock; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise

26  acquire VeriFone common stock at artificially inflated prices.  In furtherance of this

27  unlawful plan and course of conduct, Defendants took the actions set forth herein.

28

1    54.    Defendants (a) employed devices, schemes, and artifices to defraud; (b)
2  made untrue statements of material fact or omitted to state material facts necessary to make
3  the statements not misleading; and (c) engaged in acts, practices, and a course of business
4  which operated as a fraud and deceit upon the purchasers of the Company's common stock
5  in an effort to maintain artificially high market prices for VeriFone common stock in
6  violation of Section 10(b) of the Exchange Act and Rule 10b-5. Defendants are legally
7  responsible as primary participants in the wrongful and illegal conduct charged herein, and
8  the Individual Defendants are also legally responsible as controlling persons as set forth in
9  Count II, below.

10    55.    Pursuant to the above plan, scheme, conspiracy and course of conduct,
11  each of the Defendants participated directly or indirectly in the preparation and/or
12  issuance of the quarterly and annual reports, SEC filings, press releases and other
13  statements and documents described above, including statements made to securities
14  analysts and the media that were designed to influence the market for VeriFone common
15  stock. Such reports, filings, releases and statements were materially false and misleading in
16  that they failed to disclose material adverse information and misrepresented the truth about
17  VeriFone's financial condition, growth, revenues, and/or ability to execute its business
18  plan, among other things.

19    56.    By virtue of their positions at VeriFone, Defendants had actual knowledge of
20  the materially false and misleading statements and material omissions alleged herein and
21  intended to deceive Plaintiff and the other members of the Class, or, in the alternative,
22  Defendants acted with reckless disregard for the truth in that they failed or refused to
23  ascertain and disclose such facts that would reveal the materially false and misleading
24  nature of the statements made, although such facts were readily available to Defendants.
25  As the senior managers of VeriFone, the Individual Defendants had knowledge of the
26  details of VeriFone's internal affairs. Defendant Bergeron also had knowledge of
27  VeriFone's internal affairs through his position on the Company's Board of Directors.

28

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                        - 12 -

1    57.    Defendants were personally motivated to make false statements and omit
2 material information necessary to make the statements not misleading in order to
3 personally benefit from the sale of VeriFone securities from their personal portfolios.
4 During the Class Period, Company insiders sold 247,805 VeriFone shares for gross
5 proceeds of more than $11 million.

6    58.    Plaintiff and the Class have suffered damages in that, in reliance on the
7 integrity of the market, they paid artificially inflated prices for VeriFone common stock.
8 Plaintiff and the Class would not have purchased the Company's common stock at the
9 prices they paid, or at all, had they been aware that the market prices for VeriFone
10 common stock had been artificially inflated by Defendants' fraudulent course of conduct.

11    59.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff
12 and the other members of the Class suffered damages in connection with their respective
13 purchases, acquisitions and sales of the Company's common stock during the Class Period,
14 once VeriFone's true condition began to be revealed.

15    60.    By reason of the conduct alleged herein, Defendants violated Section 10(b)
16 of the Exchange Act and Rule 10b-5 promulgated thereunder.

17                      **COUNT II**
                 **(Violations of Section 20(a) of the**
18        **Exchange Act Against the Individual Defendants)**

19    61.    Plaintiff repeats and realleges each and every allegation contained in the
20 foregoing paragraphs as if fully set forth herein.

21    62.    During the Class Period, the Individual Defendants participated in the
22 operation and management of VeriFone, and conducted and participated, directly and
23 indirectly, in the conduct of VeriFone's business affairs. Because of their senior positions,
24 they knew the adverse non-public information about VeriFone's financial condition,
25 growth, revenues, and/or ability to execute its business plan, among other things.

26    63.    As officers of a publicly owned company, the Individual Defendants had a
27 duty to disseminate accurate and truthful information with respect to VeriFone's financial
28 condition and results of operations, and to correct promptly any public statements issued

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS              - 13 -

1 by VeriFone which had become materially false or misleading. Defendant Bergeron had
2 such a duty as both a senior officer and a Board member.

3      64.     Because of their positions of control and authority, the Individual
4 Defendants were able to, and did, control the contents of the various reports, press releases
5 and public filings which VeriFone disseminated in the marketplace during the Class Period
6 concerning VeriFone's business. Throughout the Class Period, the Individual Defendants
7 exercised their power and authority to cause VeriFone to engage in the wrongful acts
8 complained of herein. The Individual Defendants therefore, were "controlling persons" of
9 VeriFone within the meaning of Section 20(a) of the Exchange Act. In this capacity, they
10 participated in the unlawful conduct alleged which artificially inflated the market price of
11 VeriFone common stock.

12      65.     Each of the Individual Defendants, therefore, acted as a controlling person
13 of VeriFone. By reason of their senior management positions and Board position (for
14 Bergeron), each of the Individual Defendants had the power to direct the actions of, and
15 exercised the same to cause VeriFone to engage in the unlawful acts and misconduct
16 complained of herein. Each of the Individual Defendants exercised control over the
17 general operations of VeriFone and possessed the power to control the specific activities
18 that comprise the primary violations about which Plaintiff and the other members of the
19 Class complain.

20      66.     By reason of the above misconduct, the Individual Defendants are liable
21 pursuant to Section 20(a) of the Exchange Act for the violations committed by VeriFone.

22 **PRAYER FOR RELIEF**

23     **WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

24     A.     Determining that the instant action may be maintained as a class action under
25 Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class
26 representative;

27     B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by
28 reason of the acts alleged herein;

1      C.      Awarding Plaintiff and the other members of the Class prejudgment and post-

2  judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

3      D.      Awarding such other and further relief as this Court may deem just and

4  proper.

5                          **DEMAND FOR TRIAL BY JURY**

6      Plaintiff hereby demands a trial by jury.

7  Dated: April 12, 2013                    THE MEHDI FIRM

8

9                                                    AZRA Z. MEHDI

10                                           One Market
                                             Spear Tower, Suite 3600
11                                           San Francisco, CA 94105
                                             Telephone: (415) 293-8039
12                                           Fax: (415) 293-8001
                                             azram@themehdifirm.com

13                                           Local Counsel for Plaintiff

14                                           SAXENA WHITE P.A.
                                             Joseph E. White, III
15                                           Lester R. Hooker (241590)
                                             2424 N. Federal Highway, Suite 257
16                                           Boca Raton, FL 33431
                                             Telephone: (561) 394-3399
17                                           Fax: (561) 394-3082

18                                           jwhite@saxenawhite.com
                                             lhooker@saxenawhite.com
19

20                                           Counsel for Plaintiff

21

22

23

24

25

26

27

28

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                    - 15 -

## CERTIFICATION AND AUTHORIZATION OF LEAD PLAINTIFF

I, Rick Iaccarino, on behalf of Laborers' Local 235 Benefit Funds ("Local 235"), certify that:

1. As General Counsel, I am authorized by Local 235 to initiate litigation on Local 235's behalf and to execute this Certification.

2. I have reviewed a complaint and I authorize Saxena White P.A. to act on Local 235's behalf in this matter in filing a complaint, applying for Lead Plaintiff status and for all other purposes in connection with this litigation.

3. Local 235 did not acquire the security that is the subject of this action at the direction of counsel or in order to participate in this private action or any other litigation under the federal securities laws.

4. Local 235 is willing to serve as a representative party on behalf of a class, including by appearing at and providing testimony at deposition and trial, if necessary.

5. Neither I nor Local 235 will accept any payment for serving as a representative party on behalf of the class beyond the purchaser's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

6. Local 235 has made no transaction(s) during the Class Period in the securities that are the subject of this action, except for those transactions set forth below:

*Please see Schedule A.*

7. During the three years prior to the date of this Certification, Local 235 has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws, except for those actions set forth below:

*None.*

I declare under penalty of perjury, under the laws of the United States, that the information entered is accurate.

Date: April 11, 2013

By: _____

Rick Iaccarino, General Counsel

## SCHEDULE A
## LABORERS LOCAL 235 BENEFIT FUNDS
### Transactions in VeriFone Systems, Inc.

**Beg. Hold.**     4,805

| Common Stock Purchases | | | Common Stock Sales | | |
|---|---|---|---|---|---|
| Date | Shares | Price | Date | Shares | Price |
| 1/26/2012 | 200 | $39.82 | 5/15/2012 | 400 | $45.15 |
| 3/16/2012 | 100 | $49.71 | 5/18/2012 | 10 | $45.09 |
| 3/16/2012 | 200 | $49.78 | 6/4/2012 | 100 | $34.04 |
| 3/20/2012 | 100 | $49.71 | 8/9/2012 | 300 | $33.75 |
| | | | 8/27/2012 | 95 | $34.63 |
| | | | 9/11/2012 | 2,600 | $31.71 |
| | | | 9/18/2012 | 1,700 | $32.47 |
| | | | 9/18/2012 | 200 | $32.47 |